MORGAN v. BON BON CO., Inc. (No. 6488.)

(Supreme Court, Appellate Division, First Department. December 18, 1914.)

1. Corporations (§ 448*)—Agreements of Corporations—Liability for.

Where the promoters of a corporation, who afterwards became its officers, agreed that the corporate stock issued to them should be deposited with one of their number to secure advances, and that after the advances were paid there should be issued to plaintiff 25 shares of stock in payment of amounts to become due from the company for services to be rendered to the company, the agreement is solely one of the promoters, and is not binding upon the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1709, 1789–1792; Dec. Dig. § 448.*]

2. Corporations (§ 99*)—Stock—Issuance.

Under the Stock Corporation Law (Laws 1890, c. 564, as amended by Laws 1901, c. 354), providing that no corporation shall issue stock, except for money, labor done, or property actually received for the use of the corporation, a corporation cannot issue its corporate stock for services to be subsequently performed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 444–446; Dec. Dig. § 99.*]

Hotchkiss, J., dissenting.

Appeal from Trial Term, New York County.

Action by Harlan D. Morgan against the Bon Bon Company, Incorporated. From a judgment for plaintiff, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

George F. Hurd, of New York City, for appellant.
Edwin D. Webb, of New York City, for respondent.

INGRAHAM, P. J. The complaint alleges that in the month of March, 1904, four persons, named—

"as organizers of the Bon Bon Company, entered into an agreement, a copy of which is hereto annexed, marked 'Schedule A' and made a part thereof, wherein and whereby, for a good and sufficient consideration, it was agreed that the defendant should be organized as a corporation, that A. Maynard Lyon should make certain advances and assume certain obligations therein

specified in behalf of said company, and that after said company should have repaid to said A. Maynard Lyon all the advances that he might make to said company, and its other debts, there should be issued to plaintiff twenty-five (25) shares of the stock of said company in payment for services to be rendered by plaintiff to said company to its satisfaction."

It further alleges that in the month of March, 1904, the defendant was incorporated, and ever since has been and still is a domestic corporation; that the said four persons signing the agreement became directors of said corporation for the first year, and subscribed for one or more shares of stock of said corporation, and that at that time and thereafter the plaintiff rendered services of great value to said Bon Bon Company that the said company accepted, relying upon the terms of said agreement; that the said Lyon made advances of various sums of money to the defendant, and defendant accepted said money so advanced, and became indebted to said Lyon in various amounts; that all the parties to said agreement transferred the shares of stock of said company which were issued to them, respectively, to said Lyon as security for said advances and debts, and that prior to the commencement of this action defendant repaid or caused to be repaid to said Lyon all the advances that he had made to said company and all its other debts. It is further alleged that plaintiff has duly performed all the conditions precedent on his part pursuant to the terms of the agreement; that at all times since the execution of said agreement plaintiff has performed to defendant's entire satisfaction all services required of him by defendant, and has been and still is ready and willing to perform all services required of him by the defendant, but that since about July, 1905, defendant has not required of plaintiff, nor requested of him, the performance of any services whatever; that plaintiff has demanded of the defendant that it issue to him 25 shares of its capital stock, and defendant has failed to deliver the said 25 shares of capital stock, to the plaintiff's damage in $15,000.

The agreement, which is annexed to the complaint, is made between A. Maynard Lyon, of the first part, Edgar H. Cook, of the second part, and George W. Felter, Franklin V. Canning, Harlan D. Morgan, the plaintiff, and Robert E. Payne, of the third part, and recites that it had been agreed between the *parties thereto* to unite in the formation of a corporation under the laws of the state of New York, to be known as the Bon Bon Company, with an authorized capital stock of $100,000, for the purpose of engaging in business, among other things, of the manufacture and sale of gum, bon bons, confectionery, etc., "a portion of the capital stock of which company is to be issued to the parties hereto"; that the said Lyon, the party of the first part, has agreed to loan the company, for the purpose of its business, the amount of money specified; that the said Cook, the party of second part, had agreed to enter into a contract with the said company for the purchase and sale of the products of said company for a term of not less than two years; and that, therefore, in consideration of the promises and of the mutual covenants therein contained, it was thereby covenanted and agreed "*by and between the parties hereto as follows*": The said Lyon, the party of the first part, agreed to loan to the said corporation such sums of money as may be required for the legitimate business purposes

of the company, up to the total amount of not exceeding $20,000, to be repayable, one-half thereof upon the expiration of 18 months from the 1st day of January, 1905, and the balance thereof at the expiration of 36 months from the 1st day of January, 1905. The parties of the second and third parts (including the plaintiff) agreed with the party of the first part to deposit with and pledge to him all the stock of said corporation issued to them, respectively, the same to be held by said party of the first part as collateral security for the payment of the moneys to be advanced by him to said corporation; and it was further agreed that until the party of the first part should be fully repaid the moneys to be advanced by him to said corporation, with interest thereon, the power of voting upon all the capital stock of said company to be issued to the parties hereto as aforesaid shall be vested in the parties of the first and second parts jointly, subject only to the right of the party of the first part to enforce the pledge of said stock to him upon the terms aforesaid, and the parties mutually agreed to make such transfers of the stock issued to them, respectively, and to execute such proxies or powers of attorney as may be necessary or proper to make effectual the pledge of the said stock to the party of the first part, and the authority of the parties of the first and second parts as a joint committee to vote upon the same in the manner stated; and it was further agreed that upon the repayment to the party of the first part of all advances to be made by him as aforesaid, and the interest thereon, the pledge of said stock to him shall terminate, and the authority to the parties of the first and second parts to vote upon said stock shall cease, *and the parties hereto shall be entitled to have their stock returned to them, respectively,* free and discharged from any lien or charge under or by virtue of this agreement. There was annexed thereto a further agreement, which stated that it is understood between the undersigned organizers of the defendant that, after the company shall have repaid to A. Maynard Lyon all the advances that he shall make to said company and its other debts, there shall be issued to George W. Felter 75 shares of the stock of said company, and to Harlan D. Morgan 25 shares of the stock of said company, "in payment for the amounts to become due to them from said company *for services to be rendered by them to the company, to its satisfaction.*"

[1, 2] Neither the agreement itself, nor the supplemental agreement, was ever executed by the plaintiff. It is nowhere stated in the agreement that it was made on behalf of the said company, nor in the agreement is any obligation thereof provided for. The company was to be organized, and certain of its stock was to be issued to certain parties executing the agreement, and that stock was to be deposited with Lyon as security for advances, and, when these advances were repaid, the parties, who had deposited the stock with Lyon as security, were to have the stock "returned to them, respectively, free and discharged from any lien or charge under or by virtue of this agreement." Then these individuals undertook to transfer to Felter 75 shares, and to Morgan 25 shares, of the capital stock of the company. This stock was to be transferred to them, not for any subscription of money to the company, not for any services that had been rendered, but "for services to

be rendered by them to the company, to its satisfaction." By this agreement there was no obligation on the plaintiff to perform any service to the company or to the obligors. The agreement, it seems to me, related solely to the capital stock of the company that had been issued by the company to those executing it. So far as appears, the plaintiff owned no stock, subscribed for no stock, and was entitled to receive no stock, from the corporation. The contract on its face was an individual contract between the parties thereto, in no way binding upon the corporation, and in no way imposing any obligation upon the corporation, and creating no obligation which the corporation could ratify or confirm. No allegation is made that the contract was made on behalf of the corporation, or that the corporation ever did ratify or confirm it or assume any obligation under it.

This agreement was dated March 24, 1904. The additional agreement, under which plaintiff claims, was dated March 25, 1904. The corporation was incorporated March 25, 1904. It appeared from the evidence that both of the agreements were executed on March 25, 1904, at the same time, and that this was on the same day that the corporation was incorporated. It seems that the capital stock of this corporation consisted of $100,000, 1,000 shares of stock, of the par value of $100 a share. I cannot find that it is stated in the record how much of the capital stock of the company was issued to those executing the agreement. On the trial the defendant endeavored to prove how much stock of the defendant corporation was issued prior to May 15, 1911, but on objection of plaintiff that testimony was excluded. But there is no evidence that at the time of the commencement of this action, there was any stock of the corporation not issued, or that there was any stock that defendant corporation had power to issue to plaintiff or to any one else. The Stock Corporation Law (Laws 1890, c. 564, as amended by Laws 1901, c. 354) provides:

"No corporation shall issue either stock or bonds except for money, labor done or property actually received for the use and lawful purposes of such corporation."

It seems to me quite clear that this defendant corporation had no authority to issue its stock or bonds for services to be rendered in the future. The prohibition was that:

"No corporation shall issue either stock or bonds except for money, labor done or property actually received for the use and lawful purposes of such corporation."

It is conceded that at the time this agreement was made no services had been performed, no labor done. The contract did not purport to be a contract by the defendant corporation to issue stock to the plaintiff. The parties to it either had subscribed or were to subscribe for stock to be issued to them, and they agreed, if plaintiff rendered services to the company to its satisfaction, he was to receive, not from the corporation, but from the parties, 25 shares of the capital stock of the corporation. As to the stock which these persons owned they were at liberty to make whatever use or disposition of it that they pleased, but, as promoters or organizers of the corporation, they had no power to dis-

pose of its stock, except in accordance with the provisions of the Stock Corporation Law, under which it was incorporated.

As before stated, there is no allegation in the complaint and no proof on the trial that the agreement was made by the defendant, or in its behalf by its officers or by persons authorized to represent it, to issue its stock to the plaintiff. If the plaintiff rendered any services to the company, or its officers, he could recover for the value of the services rendered; but I cannot find any provision in the contract that imposes any obligation on the corporation. If the corporation employed the plaintiff to render services, it would be bound to pay him the value of those services. If these individuals wished him to accept a portion of their stock for the services that he was to render to the corporation, they had a perfect right to make such an agreement, and it could be enforced as against them. But I do not think there was at any time any contract, either made by the defendant corporation, or in its behalf by its officers or other persons authorized to represent it, or which imposed on defendant any obligation, or which created any obligation, which defendant ratified or confirmed, by which plaintiff was entitled to any shares of the capital stock from the corporation.

I think no cause of action was either alleged or proved against the defendant corporation, and it follows, therefore, that the judgment appealed from should be reversed, with costs, and the complaint dismissed, with costs.

SCOTT and DOWLING, JJ., concur.   CLARKE, J., taking no part.

HOTCHKISS, J. (dissenting). I think the judgment should be affirmed. Lyon, Cook, Canning, and Felter, as promoters of the company, agreed together immediately prior to its incorporation that plaintiff should have 25 shares of stock "in payment for the amounts to become due * * * for services to be rendered * * * to the company" to its satisfaction. On its incorporation, the above-named promoters became officers and directors of the company. Cook, vice president, swears that after the company was incorporated plaintiff was told of the arrangement. Plaintiff confirms him, and both say that in view of this arrangement, and presumably in faith thereof, plaintiff was asked to open the books of the company, which he did, and performed other services as well. This seems to me to show acceptance of the contract by the plaintiff and the adoption thereof by the company. Plaintiff performed all the services required of him, and stood ready to perform such further services as might be required, and his action is one for damages for the breach of the contract.

I do not think the Stock Corporation Law has anything to do with the case. Proof that all of the stock was issued, and that the company was unable to issue to plaintiff any stock, would have been no defense, because in such case he is entitled to the value of the stock at the time he became entitled to receive it. As to the extent of plaintiff's right to recover, it might be argued that under the peculiar form of the agreement plaintiff was not entitled to claim 25 shares of stock for any service he might render, however small, and that the contract might be con-

strued as an agreement to appropriate 25 shares, of which he was to receive so much as might represent the value of the services he might render. But the court charged the jury as follows:

"The question is: Were the services which Cook employed the plaintiff to perform with regard to the books *the* services contemplated and intended in this agreement?"

And this question the jury must be assumed to have answered in plaintiff's favor. On this theory the recovery was right, and the exclusion of the testimony offered by defendant to show the value of the services actually rendered by plaintiff was correct. Under any circumstances, the complaint should not be dismissed, for plaintiff was at least entitled to recover the value of stock equal to the value of the services he actually rendered.